(57 Misc. Rep. 504.)

### JIMMERSON v. FERGUSON.

(Supreme Court, Special Term, Westchester County. January, 1908.)

TRUSTS—ENFORCEMENT—VERBAL PROMISE.

> An aged testatrix gave by will all her estate to her son, with whom she had lived for many years. She was induced to make a new will at the solicitation of her brother, making him sole legatee, to prevent the son's wife, whose separation from him it was believed would be permanent, from obtaining any dower rights in testatrix's realty, under a promise by the brother to hold the estate for the benefit of the son. *Held*, that equity would compel the brother to perform his promise.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 18, 19.]

Action by Seth Howard Jimmerson against Orson J. Ferguson to compel performance of promise of defendant to hold estate of his sister, of which he was legatee, for the benefit of plaintiff. Judgment for plaintiff.

Benjamin Irving Taylor, for plaintiff.
Barrett & Buckbee, for defendant.

MILLS, J. The rule under which this action is brought and sought to be maintained is well settled. It was clearly stated by the Court of Appeals in the case of Amherst College v. Rich, 151 N. Y. 282, at page 323, 45 N. E. 876, at page 887, 37 L. R. A. 305, in these words:

> "If the testator is induced either to make a will or not to change one after it is made, by a promise, express or implied, on the part of a legatee that he will devote his legacy to a certain lawful purpose, a secret trust is created, and equity will compel him to apply property thus obtained in accordance with his promise. * * * The rule is founded on the principle that the legacy would not have been given * * * unless the promise had been made, and hence the person promising is bound in equity to keep it, as to violate it would be fraud. While a promise is essential, it need not be expressly made; for active co-operation or silent acquiescence may have the same effect as an express promise."

It seems to me that the proofs establish the plaintiff's case here within the rule above stated. The plaintiff was the son and only child of the testatrix, who was about 80 years of age. At the time of her death, October 30, 1904, and for several years prior thereto, they were living together at the village of Port Chester. The will was made on the 17th of March, 1904, and in terms made the defendant, the plaintiff's uncle and the brother of the testatrix, sole devisee and legatee. Some four or five years before the testatrix had made a will giving to her son, the plaintiff, all her property, real and personal. The most pleasant relations existed throughout between the mother and son. The son was married, but for five years had been separated from his wife, and apparently they were permanently alienated. The defendant had for many years been the confidential adviser of the plaintiff. It seems to have been the desire of the family, after the separation between the plaintiff and his wife, that some scheme should be devised and followed by which the wife could be prevented from obtaining any dower right in the mother's real estate upon and after her death. With this end in view the plaintiff consulted the defendant, and upon the defendant's suggestion or advice consulted several lawyers, and was advised

by all that the only method by which the desired result could be accomplished was to have the mother will her property in form absolutely to some third party, who would hold it for the benefit of the plaintiff, her son, but who apparently would be the absolute owner of it at the mother's death. At this point the son proposed to have the will made in favor of a friend of his, living in Connecticut. This plan was negatived by the uncle, the defendant, upon the ground that it was not wise to put the property into the hands of a person outside of the family. He thereupon advised the plaintiff to have the will made in his (the uncle's) favor, and promised that, in case that was done, he would carry out the scheme, which involved the holding of the property for the benefit of the plaintiff, and giving him the income thereof, and arranging it so that he should ultimately have it. He agreed with the plaintiff that if this were done he would make a codicil to his will, providing that at his death all the property which he received from his testatrix, his sister, should go to the plaintiff, her son.

The plaintiff was permitted, as a witness, to testify that, after this arrangement was had with the defendant, he went to his mother and explained it to her; but, upon objection being made in behalf of the defendant, he was not permitted to testify to the conversation had with his mother. He attended to procuring the witnesses to the will and arranging for its execution. Both wills were committed to his care by the defendant, and were held by him until after the death of his mother, the testatrix. Either very shortly before the testatrix's death, when that event was evidently imminent, or shortly afterward, the defendant took the two wills from the plaintiff, and asked him, in the presence of his housekeeper, which one he would have probated; and the defendant's wife, in the housekeeper's hearing, and in that of the defendant, said:

"Probate the last will [i. e., the one giving the property to the defendant] and we will keep your wife entirely out."

It was a part of the agreement that the defendant was to execute a codicil to his own will, which would give the property to the son, the plaintiff, at his (the defendant's) death, and he in fact shortly afterward exhibited to the plaintiff what purported to be such a codicil. Under all these circumstances, I am satisfied that the defendant did promise to take the property and hold it for the benefit of the plaintiff, in order to carry out the scheme which he had counseled, to deprive the plaintiff's wife of any dower right therein, and that such was not only the understanding of the plaintiff and defendant, but also of the testatrix. While there is no direct testimony to the effect that the testatrix was a party to this arrangement, yet I think the circumstances indicate it with convincing force. I do not credit defendant's statement to the effect that, shortly before the execution of the will, the mother spoke unkindly of her son and declared her purpose to give her property absolutely to the defendant. Such declaration and purpose seem to be absolutely at variance with all the facts proven.

It is my conclusion, therefore, that the plaintiff is entitled to judgment substantially as asked in the complaint.

Judgment accordingly.